Robert Eugene DIERKES and Emma
H. Dierkes, et al., Appellants,

v.

BLUE CROSS AND BLUE SHIELD OF
MISSOURI and Rightchoice Managed
Care, Inc., d/b/a Alliance Blue Cross
Blue Shield, Respondents.

No. 81236.

Supreme Court of Missouri,
En Banc.

April 27, 1999.

Rehearing Denied June 1, 1999.

Jeffrey J. Lowe, Robert F. Ritter, Jason D. Dodson, St. Louis, for Appellants.

Alan C. Kohn, Robert F. Murray, Jennifer S. Forsythe, St. Louis, for Respondents.

JOHN C. HOLSTEIN, Judge.

Robert Dierkes and his mother, Emma Dierkes (plaintiffs), brought a class action suit against Blue Cross and Blue Shield of Missouri and Rightchoice Managed Care, Inc. (Blue Cross), alleging breach of contract, unjust enrichment, breach of duty of good faith and fair dealing, misrepresentation, and fraud. The action arose out of the failure of Blue Cross to secure state approval of increases in its premium rates for Medicare supplemental insurance (Medigap). The trial court entered summary judgment for Blue Cross. Plaintiffs appealed. Following opinion by the Missouri Court of Appeals, this Court granted transfer. *Mo. Const. art. V, section 10.* The judgment is reversed in part, affirmed in part and remanded.

### I.

Plaintiffs' class is made up of subscribers of non-ERISA Medigap health insurance plans issued by Blue Cross from 1992 to 1994. The Missouri Medicare Supplement Insurance Act (MMSIA) provides in section 376.874:[1]

> Medicare supplement policies shall return to policyholders benefits which are reasonable in relation to the premium charged. The director shall issue reasonable regulations to establish minimum standards for loss ratios of Medicare supplement policies on the basis of incurred claims experience, or incurred healthcare expenses where coverage is provided by health maintenance organizations on a service rather than reimbursement basis, and earned premiums in accordance with accepted actuarial principles and practices.

1. All statutory references are to RSMo 1994 unless otherwise indicated.

Pursuant to this statute, the Missouri Department of Insurance (DOI) promulgated a regulation effective July 30, 1992, providing that no insurance company selling Medicare supplement policies in Missouri can raise premiums without the approval of DOI. That regulation, 20 CSR 400–3.600(12)(B), provides:

An insurer shall not use or charge premium rates for a Medicare supplement policy or certificate unless the ratings, rating schedule and supporting documents have been filed with and approved by the director in accordance with the filing requirements and procedures prescribed by the director.

The regulations further prescribe that no Medigap policy shall be issued unless aggregate benefits are returned to the policyholders in an amount "at least sixty-five percent (65%) of the aggregate amount of premiums earned in the case of individual policies." 20 CSR 400–3.600(11)(A)B.

Blue Cross sold certain Medicare supplement insurance products in Missouri, including what are referred to as prestandardized and standardized plans. Effective January 1, 1993, Blue Cross increased the premiums that it charged for prestandardized Medicare supplement policies. From January 1, 1993, through August 10, 1994, Blue Cross did not obtain approval from the DOI for the rate increase prior to charging the increased premiums for the prestandardized plans. From January 1, 1994, through August 10, 1994, Blue Cross increased premiums for the standardized plans in excess of those previously approved by DOI.

On August 9, 1994, the DOI filed administrative charges against Blue Cross pursuant to section 376.889, RSMo Supp. 1993,[2] alleging that Blue Cross knowingly changed premium rates for its Medicare supplement policies without first obtaining approval from the DOI, in violation of 20 CSR 400–3.600(12)(B). On the same date, the director issued an order for Blue Cross to cease marketing certain Medicare supplement policies, except at the last approved rates. Immediately thereafter, Blue Cross submitted its premium rate data to the DOI. On August 11, 1994, the director approved the premium rates for all Blue Cross Medicare supplement policies effective August 11, 1994. The director also rescinded his August 9 order.

On September 2, 1994, Blue Cross and the DOI executed a settlement agreement in which Blue Cross promised to pay $1,000,000.00 to the Missouri state school fund. The settlement agreement provided that the dismissal would be with prejudice if the DOI took no legal or administrative action against Blue Cross. On September 15, 1994, the DOI dismissed the charges against Blue Cross.

Plaintiffs then filed their class action in which they allege that Blue Cross illegally raised its premium rates for Medicare supplement insurance without the required approval of the DOI, and that the premiums charged were excessive. In count II of their amended petition, plaintiffs allege that Blue Cross "breached its contract with plaintiffs and plaintiffs' class by increasing rates without state approval, charging plaintiffs rates that did not, in 1992, 1993 and 1994, meet state guidelines." In count III, plaintiffs allege that Blue Cross "raised its rates without state approval and charged plaintiffs and the plaintiffs' class excessive, unauthorized rates" and Blue Cross "was therefore enriched at the expense of plaintiffs and the plaintiffs' class." In count VII, plaintiffs

---

**2.** Section 376.889, RSMo Supp.1993, provides:

In addition to any other applicable penalties, the director may require issuers violating any provision of sections 376.850 to 376.890 or regulations promulgated pursuant to sections 376.850 to 376.890 to cease marketing any Medicare supplement policy or certificate in this state which is related directly or indirectly to a violation, or may require such issuer to take such actions as are necessary to comply with the provisions of sections 376.850 to 376.890, or both.

allege that in selling the policies to plaintiffs and the plaintiffs' class, Blue Cross engaged in the following acts of deception, fraud and misrepresentation of material facts by:

a. misrepresenting to plaintiffs in writing that [Blue Cross] Medigap coverage met all federal and state requirements;

b. engaging in the prohibited transaction of raising rates without state approval contrary to their representations;

c. charging plaintiffs and plaintiffs' class unauthorized, excessive rates contrary to their representation; and

d. violating regulations intended to protect the plaintiff class, contrary to their representations of compliance with state laws.

In count VIII, plaintiffs allege that Blue Cross "engaged in the concealment, suppression, or omission of material fact by failing to inform plaintiffs and the plaintiffs' class that the increased rates charged by [Blue Cross] were not approved by the Missouri Department of Insurance, as required."

On July 25, 1997, the trial court entered its order and judgment granting Blue Cross' motion for summary judgment on all counts. The trial court found that plaintiffs' claims were preempted because the director's "statutory enforcement mechanisms preclude plaintiffs' claims, which arise from violations of sections 376.934 and 376.874, RSMo (1994)." The trial court also concluded that the "record contains no facts to support the allegations that plaintiffs sustained damage" because the DOI determined the rate data were reasonable.

## II.

■ On appeal, plaintiffs challenge both conclusions. Blue Cross also disputes the trial court's decision that plaintiffs' case is not barred by res judicata. Our review of this summary judgment is essentially de novo, in accordance with *ITT* *Commercial Finance Corp. v. Mid–America Marine Supply Corp.* 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* In determining whether summary judgment was properly granted, the factual record is reviewed in a light most favorable to the party against whom summary judgment is entered. *Id.* at 382.

## III.

■ Blue Cross argues that its previously settled administrative action brought by DOI precludes further action by plaintiffs. For res judicata to bar this action, the previous claim must have been for the same cause of action as the subsequent, precluded claim. *King Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1992). As explained below, plaintiffs' common law claims articulate fundamentally different causes of action than that brought by the DOI. *See infra* at section V. For those reasons, their claims do not share the required "identity" of a cause of action with the previous claim. *King Contractors,* 821 S.W.2d at 501. Also, plaintiffs' case and the DOI's administrative case do not share the requisite identity of parties. Plaintiffs here were neither parties to, nor directly represented in, the earlier administrative action between the DOI and Blue Cross. As also discussed in section V, the DOI helps to ensure a fair bargain for all Missourians seeking Medicare supplement insurance. It does not enforce common law claims of individual citizens against their insurers. Thus, the individual plaintiff-policyholders in the present case cannot be bound by the prior proceeding under the doctrine of res judicata.

## IV.

■ The trial court also found that the record "does not disclose any contrac-

tual provisions that expressly provide that rates will be charged only as approved by DOI." This finding suggests that even if not preempted by the statutes at issue, plaintiffs failed to show Blue Cross had a contractual obligation to comply with section 376.874 and its corresponding regulations. In its petition, plaintiffs allege a promise by Blue Cross to "meet all state and federal guidelines." The documents attached to the petition confirm that Blue Cross represented that its policies met all "state and federal requirements" and that any change in premiums was "subject to all applicable laws and regulations." These allegations are not refuted by the motion for summary judgment. Also undisputed in the motion for summary judgment is that representations of Blue Cross made in its information booklet and descriptive brochure are a part of the insuring agreement. *See Crum–Vanlandingham v. Blue Cross Health Services,* 734 S.W.2d 266, 269 (Mo.App.1987); *Morris v. Travelers Ins. Co.,* 546 S.W.2d 477, 486 (Mo.App.1976). The representations here seem clear and unambiguous. But even if the terms of an insurance agreement are deemed ambiguous, they must be construed to give effect to the reasonable objective expectations of the insured. *Lightner v. Farmers Ins. Co., Inc.,* 789 S.W.2d 487, 490 (Mo. banc 1990).

When an insurer represents that its insurance meets "all state and federal guidelines" applicable to such policies, a reasonable insured is entitled to expect the insurer to comply with the statutory rate setting program and the regulations of DOI on the subject. No one can seriously argue that such rate setting scheme is not a "state guideline." Blue Cross could have enumerated the specific guidelines with which it promised to comply. Instead, it decided to represent that it complied with "all" of them. This promise necessarily includes section 376.874 and regulations adopted pursuant to that statute. The trial court erred in its finding that no contractual provision required compliance with those state guidelines.

## V.

Next, we turn to whether the statutory enforcement scheme covering Medicare supplement insurance preempts all of plaintiffs' claims. When the legislature has established other means of enforcing its statutes, this Court will not recognize a private civil action for a violation unless such appears by clear implication to have been the legislative intent. *Shqeir v. Equifax, Inc.,* 636 S.W.2d 944, 948 (Mo. banc 1982); *R.L. Nichols Ins., Inc. v. Home Ins. Co.,* 865 S.W.2d 665, 666 (Mo. banc 1993). Although section 376.874 mandates a reasonable return for policyholders on certain insurance coverage, it vests the DOI with the power to carry out that mandate. Under it, the director "shall issue reasonable regulations to establish minimum standards" with which insurers must comply. Section 376.874. Further, section 374.280 authorizes the director to order a monetary forfeiture and to suspend the license of insurers that knowingly violate chapter 376. Section 376.889 provides the director with still more options.

In the same way, section 375.934 prohibits unfair trade practices, including false advertising and misrepresentation for the benefit of the general insurance purchasing public. Section 375.944 empowers the director to enforce section 375.934 in ways similar to those authorized by sections 374.280 and 376.889. Through this system of regulatory compliance and enforcement, not private lawsuits, the legislature provides Missourians purchasing Medicare supplement insurance with at least a minimally fair deal. *See Shqeir,* 636 S.W.2d at 947 (policyholder not entitled to bring private action for violation of statute requiring that insurers notify insureds whose coverage they refuse to renew). In the absence of Blue Cross' voluntary promise to its policyholders to comply with "all" governmental guidelines, plaintiffs would

have no cause of action. The trial court's dismissal of causes of action based solely on the statutory violation is affirmed.

■ In the present case, plaintiffs are not suing solely for Blue Cross' violation of section 376.874, although compliance with that section becomes an element of the claim to the extent it is part of Blue Cross' promise. Instead, plaintiffs are suing for, among other things, fraud, breach of contract, unjust enrichment, and breach of duty of good faith, claims existing independent of the foregoing statute.

■ It is true that this Court generally does not interpret a statute to establish a private cause of action. On the other hand, our courts have consistently held "a statutory right of action shall not be deemed to *supersede and displace remedies otherwise available at common law* in the absence of language to that effect unless the statutory remedy fully comprehends and envelopes the remedies provided by common law." *Detling v. Edelbrock,* 671 S.W.2d 265, 271–272 (Mo. banc 1984) (emphasis added) (housing code held to be only cumulative of tenant's common law remedies for breach of implied warranty of habitability); *see also Everett v. County of Clinton,* 282 S.W.2d 30, 34 (Mo.1955) (availability of statutory method of investigating public contracts does not preclude taxpayers' common law right to enjoin an illegal tax expenditure); *Stiffelman v. Abrams,* 655 S.W.2d 522, 532 (Mo. banc 1983) (same rule applies when existing right of action is also based upon a statute).[3] In the instant case, section 376.874 does not "comprehend and envelope" plaintiffs' common law action for breach of contract and other common law actions stated in their petition, although the violation of

the statute does constitute part of the basis of those actions.

First, the remedies for violation of section 376.874 mentioned in sections 374.280 and 376.889 flow exclusively to the DOI and are, therefore, intended to help maintain a fair economic playing field for the public at large, not to enforce individual rights. By contrast, a common law cause of action is designed to enforce private rights arising under a private agreement or from private misconduct. Suspension of an insurer's license or imposition of a civil penalty are inadequate to vindicate the interest of individual policyholders who were entitled to rely upon Blue Cross' promised compliance with lawful guidelines. *See Detling,* 671 S.W.2d at 272.

Second, the common law claims asserted here are not new rights created solely by the statute, but the rights exist by virtue of Blue Cross' voluntary promise to comply with "all requirements for Medicare Supplement programs." *See Hickman v. Kansas City,* 120 Mo. 110, 117, 25 S.W. 225, 226 (1894). Third, plaintiffs' common law actions provide for different remedies than does the statutory scheme. For example, punitive damages may be assessed in certain fraud cases. *St. Louis County v. Moore,* 818 S.W.2d 309, 310 (Mo.App. 1991); *Brown v. New Plaza Pontiac Co.,* 719 S.W.2d 468, 472 (Mo.App.1986) (the latter explaining standards for punitive damages).

■ Finally, to construe the statutory provision here as having been intended by the legislature to "comprehend and envelope" the common law remedies would lead to irrational results. This is because the MMSIA, sections 376.850 through 376.890, and the regulations pursuant thereto provide comprehensive and de-

---

3. The Missouri rule is consistent with that of many other states. *See, e.g., Brooke v. Restaurant Services, Inc.,* 906 P.2d 66 (Colo.1995) (civil rights statute does not bar preexisting common law acts for tortious interference of contract); *Campbell v. Criterion Group,* 605 N.E.2d 150 (Ind.1992) ("supplementation of law with novel statutory arrangements ..."

does not necessarily preempt the common law system alongside of which those provisions must operate); *compare Dudewicz v. Norris–Schmid, Inc.,* 443 Mich. 68, 503 N.W.2d 645, 649–50 (1993) (remedies provided by statute for which there is no common law counterpart are exclusive).

tailed guidance regarding what may and may not be included in a Medicare supplement insurance policy and gives DOI plenary authority to sanction non-compliance. So expansive and detailed are the statutes and regulations on Medigap insurance, it is hard to imagine a claim by an insured on the policy that would not involve one or more mandated provisions found in the statutes or regulations. If the existence of those provisions is construed as preemptive of common law claims, virtually all claims by an insured under such policy would be forbidden. In most cases, the insured would be relegated to the absolute discretion of DOI on whether to enforce the insured's policy provisions. This Court will not assume the legislature intended an absurd or unreasonable construction of the statutes. *Ranken Tech. Inst. v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991).

■ As the trial court put it, the common law claims are "not based solely on a violation of the statutes and do not consist solely of an attempt to enforce the statutes." *See, e.g. Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. banc 1988) (listing the numerous elements of fraud a plaintiff must prove that are not addressed by the statutes). *See also Fitzgerald v. Midwest Building Inspection, Inc.,* 911 S.W.2d 676, 677–78 (Mo.App.1995) (violation of a state regulation did not create new private right of action but "might involve facts which would form the basis of liability on a recognized cause of action such as fraudulent concealment.") (citing *Noss v. Abrams,* 787 S.W.2d 834, 838 (Mo. App.1990)). The regulatory scheme established in chapters 374, 375 and 376 does not preempt those common law claims brought by plaintiffs so long as plaintiffs' claims assert more than mere violations of sections 375.934 or 376.874. The trial court's contrary summary judgment that the common law actions are preempted is reversed.

## VI.

■ With respect to the question of damages, plaintiffs challenge the trial court's holding that the record "contains no facts to support the allegations that plaintiffs sustained damages." The trial court based its conclusion on the DOI's finding that Blue Cross' premium increases, although illegal, were reasonable.

■ Damages for fraud and breach of contract are measured by the "benefit of the bargain" rule. *Boten v. Brecklein,* 452 S.W.2d 86, 93 (Mo.1970) (contract); *Heberer,* 744 S.W.2d at 443 (fraud). That is, a successful plaintiff is entitled to the loss the fulfillment of the contract would have avoided or that its breach has caused. *Boten,* 452 S.W.2d at 93. Moreover, nominal damages are available where a contract and its breach are established. *Wasson v. Schubert,* 964 S.W.2d 520, 526 (Mo.App. 1998). In fraud cases where the benefit of the bargain rule is inadequate, other measures of damages may be used. *Kerr v. First Commodity Corp. of Boston,* 735 F.2d 281, 285 (8th Cir.1984) (citing *Schroeder v. Zykan,* 255 S.W.2d 105, 110 (Mo. App.1953)).

The "bargain" here included an unequivocal representation by Blue Cross that changes in premiums would comply with "all" state guidelines. That representation having been made, Blue Cross is not free to unilaterally change the means for calculating premiums. Inherent in its promise was compliance with a regulation that in equally plain language prohibits charging premiums in excess of rates "filed with and approved by the director in accordance with the requirements and procedures prescribed by the director." Blue Cross concedes that prior to August of 1994 it charged rates in excess of those previously "filed with and approved by" the DOI. Damages are easily ascertainable by subtracting the premiums authorized by DOI from the actual premiums paid by the subscribers. Thus, plaintiffs have made at least a prima facie showing of damages.

Nevertheless, Blue Cross claims it has overcome any claim for damages under its contractual agreement because it produced unrebutted evidence that had it sought approval of its premium rate increases, those increases would have been deemed reasonable and approved. The argument is flawed in several respects. First, Blue Cross' promise was to abide the state guidelines, which in turn prohibit rate increases until *after* the proper documentation is filed and approved. Second, the statute and its coordinate regulations make no provision for retroactive increases in premiums and Blue Cross points to no part of its agreement containing an escape clause that excuses Blue Cross from complying with a state guideline if it acts reasonably. Instead, Blue Cross documents disclose only that any increase in premiums would be made "subject to all applicable laws and regulations." In sum, pursuant to Blue Cross' representations, it was only entitled to charge premiums at rates that have been filed with and approved by DOI, not at rates that it subsequently determines are reasonable.

In addition, the evidence to which Blue Cross points in support of its claims that its rate increases were reasonable falls short of the mark, when the evidence is viewed in a light most favorable to plaintiffs. The DOI letter that Blue Cross claims exonerates its increases states only that "the rate increase would have been approved for January 1, 1994," and thus, plaintiffs' situation was one of "no harm, no foul." The letter is silent as to what action might have been taken by the DOI for excess charges previous to 1994. Moreover, a *post hoc* assessment of "no harm, no foul" by the DOI director of consumer affairs is rigorously rebutted by showing that plaintiffs were entitled to rely on a contractual representation, not on the DOI's determination of what a reasonable premium might have been – especially when the agency determination comes at a time when the agency is being pacified by a million dollars in fines from the offending party.

Blue Cross also relies on the affidavit of its own employee, insurance actuary Dennis Puryear, who affirmed that from 1992 to 1994 each relevant policy "maintained the 65% loss ratio standard prescribed by regulation." However, Mr. Puryear also testified in his deposition that, in fact, Blue Cross did not have to meet a sixty-five percent loss ratio in every case. Mr. Puryear claimed that only "completely mature" insurance products must meet the sixty-five percent standard. He indicated that in 1992 some of the policies in question were not mature and did not exceed the 65% loss standard. Blue Cross fails to direct this Court to any such regulatory exception in its brief. Further, independent research fails to disclose such an exception. Thus, even if one analyzes damages as suggested ·by Blue Cross, there remains a question of fact as to whether or not plaintiffs have suffered damages. At most, Mr. Puryear's evidence suggests that some, but perhaps not all, premium increases from 1992 through 1994 would have been approved as reasonable. As previously noted, it is not the reasonableness of premiums but the loss of the benefit of plaintiffs' bargain for lawful premium charges by which damages are measured under their common law claims.

## CONCLUSION

The judgment of the trial court is reversed in part and affirmed in part and remanded for further proceedings consistent with this opinion.

All concur.