# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2225

_____

| | | |
|---|---|---|
| Marva Jean Saunders, et al., | * | |
| | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Farmers Insurance Exchange, et al., | * | Appeals from the United States |
| | * | District Court for the |
| Defendants - Appellees. | * | Western District of Missouri. |

_____

No. 05-2228

_____

| | |
|---|---|
| Marva Jean Saunders, et al., | * |
| | * |
| Plaintiffs - Appellants, | * |
| | * |
| v. | * |
| | * |
| American Family Mutual Insurance | * |
| Company, | * |
| | * |
| Defendant - Appellee. | * |

_____

No. 05-2231
_____

Coleman McClain, et al.,                    *
                                            *
        Plaintiffs - Appellants,            *
                                            *
v.                                          *
                                            *
Shelter General Insurance                   *
Company, et al.,                            *
                                            *
        Defendants - Appellees.             *
                            _____

                    Submitted:  September 16, 2005
                        Filed:  March 8, 2006
                            _____

Before LOKEN, Chief Judge, FAGG and BYE, Circuit Judges.
                            _____

LOKEN, Chief Judge.

        In 1996, numerous plaintiffs sued twenty-five insurers under the Fair Housing
Act, 42 U.S.C. §§ 3601 et seq., and the Civil Rights Acts of 1866 and 1870, 42 U.S.C.
§§ 1981 and 1982, seeking class action relief for defendants' allegedly discriminatory
policies that deny homeowners insurance to the residents of minority neighborhoods
in Missouri.  The district court denied class certification and dismissed the complaint
without prejudice, concluding that plaintiffs lack standing to bring claims against
defendants against whom they have alleged no direct injury.  We affirmed.  Canady
v. Allstate Ins. Co., 1997 WL 33384270 (W.D. Mo.1997), aff'd, 162 F.3d 1163 (8th
Cir.1998) (table) (Canady).

Plaintiffs then filed ten new actions, each asserting the same claims against a single Canady defendant. Warned by the district court that they "cannot establish a 'direct injury' without showing a 'direct contact' between the plaintiffs and the defendant," plaintiffs filed Revised Second Amended Complaints, each challenging a single defendant's alleged unlawful practices with respect to the marketing and underwriting of homeowners insurance in a single, contiguous black community in Kansas City. In McClain v. American Econ. Ins. Co., 424 F.3d 728 (8th Cir. 2005) (McClain), we affirmed the dismissal of the complaints against three insurers for lack of standing. We now consider three separate appeals challenging the dismissal of complaints against three other insurers -- Farmers Insurance Exchange (Farmers), American Family Mutual Insurance Company (American Family), and Shelter General Insurance Company (Shelter). These appeals raise an issue not raised in McClain -- whether the district court properly applied the filed rate doctrine in dismissing claims that defendants' pricing policies and practices reflect unlawful race discrimination. We reverse the dismissal of the pricing claims and otherwise affirm.

## I. The Insurance Coverage Claims.

Like the appellants in McClain, plaintiffs asserted claims alleging that Farmers, American Family, and Shelter use unlawfully discriminatory underwriting criteria that render minority residents in the Community ineligible for homeowners insurance. As in McClain, the district court dismissed these claims for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Steger v. Franco, Inc., 228 F.3d 889 (8th Cir. 2000). The court concluded that no plaintiff has shown a direct contact with a defendant establishing injury "fairly traceable" to the challenged underwriting criteria. The court rejected plaintiffs' alternative theory that they have standing without proof of direct contacts because their knowledge of the defendants' underwriting practices deterred them from making futile applications for insurance.

On appeal, plaintiffs argue that the district court did not give them adequate notice that it would make fact-based rulings under Rule 12(b)(1) and did not allow adequate discovery to develop evidence of direct contacts. We reject this contention for the reasons stated in McClain, 424 F.3d at 732. Plaintiffs further argue that it is sufficient proof of direct contact that a plaintiff applied for homeowners insurance and was rejected, without regard to the reason for the rejection or whether the plaintiff was made aware of that reason. The district court rejected this contention, and we agree. A direct injury must "result[] from the challenged conduct," McClain, 424 F.3d at 731; that is, it must be "fairly traceable to the challenged action of the defendant." Lujan, 504 U.S. at 560 (quotation omitted). Therefore, to make a sufficient showing of direct injury, a plaintiff must show that he or she applied for homeowners insurance and was rejected for a reason related to the challenged underwriting criteria. Plaintiffs failed to make that showing. Finally, plaintiffs press on appeal their alternative deterrence theory. We reject this contention for the reasons stated in McClain, 424 F.3d at 733-34.

As in McClain, the district court applied the correct legal standard, carefully reviewed the lengthy discovery record, and resolved fact disputes relating to these jurisdictional issues, as Rule 12(b)(1) permits. Plaintiffs fail to demonstrate that the court's findings regarding the absence of direct injury were clearly erroneous.

## II. The Price Discrimination Claims.

Plaintiffs further allege that each defendant violated the Fair Housing Act and the Civil Rights Acts by "charg[ing] higher premium rates for the same type of homeowner's coverage to homeowners in the Community . . . than it has charged homeowners in white communities." The district court dismissed these price discrimination claims. Applying what has come to be known as the filed rate doctrine, the court held that, because homeowners insurers doing business in Missouri may only charge premium rates filed with the Missouri Department of Insurance, a ratepayer suffers no injury from being charged the filed rate. Therefore, the court reasoned,

plaintiffs lack standing to claim that a different rate should have been charged. See Keogh v. Chicago & N.W. Ry., 260 U.S. 156, 161-65 (1922). On appeal, plaintiffs concede that Missouri law requires insurers to charge their filed rates. But plaintiffs argue that the filed rate doctrine may not be applied to bar damage claims under federal civil rights statutes based upon the State's economic regulation of insurance rates. On this record, we agree with plaintiffs.

At its core, the filed rate doctrine has two components. It prohibits a regulated entity from discriminating between customers by charging a rate for its services other than the rate filed with the regulatory agency, and it preserves the authority and expertise of the rate-regulating agency by barring a court from enforcing the statute in a way that substitutes the court's judgment as to the reasonableness of a regulated rate. See AT&T v. Central Office Tel., Inc., 524 U.S. 214, 221-23 (1998); Arkansas La. Gas Co. v. Hall, 453 U.S. 571, 577-78 (1981); Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 250-52 (1951).

In Keogh, the Supreme Court faced a somewhat different question, namely, whether a regulated entity's customers may recover treble damages under the federal antitrust laws because the rates, though approved by a federal rate-regulating agency, were the product of an illegal price fixing conspiracy. The Court noted that the regulatory agency's approval established the lawfulness of the filed rates. Therefore, the Court concluded, the antitrust plaintiff could not recover damages because it had not been injured in its business or property within the meaning of the Sherman Act. 260 U.S. at 162-63. This is not an antitrust immunity, the Court later explained:

> The alleged collective activities of the defendants . . . were subject to scrutiny under the antitrust laws by the Government and to possible criminal sanctions or equitable relief. Keogh simply held that an award of treble damages is not an available remedy for a private shipper claiming that the rate submitted to, and approved by, the ICC was the product of an antitrust violation.

Square D Co. v. Niagra Frontier Tariff Bureau, Inc., 476 U.S. 409, 422 (1986). Having narrowly defined the scope of Keogh in this fashion, the Court in Square D declined to overrule this long-standing precedent.[1]

In these cases, the district court applied the no-injury principle of Keogh to dismiss federal race discrimination claims because those claims challenge insurance premiums rates filed with a state regulatory agency. This ruling goes beyond the core of the filed rate doctrine, which simply allocates between a regulatory agency and the courts the authority to approve and enforce rates filed with the agency. Here, as in Keogh and Square D, the question is whether the agency's rate-regulating authority trumps the court's authority to enforce *a different statute*. Plaintiffs correctly argue that the Supreme Court in Keogh and Square D harmonized two federal statutes with competing purposes, the Sherman Act and the Interstate Commerce Act, whereas here the Supremacy Clause tips any legislative competition in favor of the federal anti-discrimination statutes. Cf. City of Kirkwood v. Union Elec. Co., 671 F.2d 1173, 1178-79 n.14 (8th Cir. 1982). Therefore, a decision that these federal claims are barred by the State's regulation of the defendants must be grounded in the language, remedies, and purposes of the *federal* statutes at issue.

Without question, this court and others have applied this aspect of the filed rate doctrine to bar federal RICO and antitrust claims seeking relief against utility rates filed with state regulatory agencies. H.J. Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485 (8th Cir.), cert. denied, 504 U.S. 957 (1992); see Texas Commercial Energy v. TXU Energy, Inc., 413 F.3d 503 (5th Cir. 2005); Wegoland Ltd. v. Nynex Corp., 27

---

[1]The Court's reference to injunctive relief in Square D was based upon Georgia v. Pennsylvania Rail Co., 324 U.S. 439 (1945), which limited Keogh by holding that Georgia could obtain injunctive relief under the antitrust laws against the railroads' collective rate-making procedures, but not damages. Here, without discussion, the district court dismissed plaintiffs' claims for injunctive relief under the civil rights acts, as well as their claims for damages. On appeal, defendants totally fail to support this seemingly unjustified expansion of the filed rate doctrine.

F.3d 17 (2d Cir. 1994); Taffet v. Southern Co., 967 F.2d 1483 (11th Cir.) (en banc), cert. denied, 506 U.S. 1021(1992). But RICO and the Sherman Act require a plaintiff to prove injury to "his business or property." 18 U.S.C. § 1964(c). Thus, the no-injury principle of Keogh applies to deprive a RICO or antitrust plaintiff of standing under federal law to challenge a filed rate that must be charged under state law. But standing to sue under federal anti-discrimination statutes such as the Fair Housing Act is far broader. See Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205 (1972). If a defendant's pricing policies or practices were the product of unlawful race discrimination, plaintiffs who purchased homeowners insurance at the discriminatory rates have standing to seek relief under these federal statutes even if the defendant was required by state law to charge its filed rates. Thus, as to this limited group of plaintiffs, the no-injury principle of Keogh and H.J. Inc. will not support an affirmance.

On appeal, beyond supporting the district court's flawed application of the Keogh no-injury principle, defendants simply argue at great length that federal courts should not interfere with the state regulatory regime by adjudicating claims that particular rates are the product of race discrimination. No doubt a ruling that rates are unlawfully discriminatory under federal law will have some impact on the state regulatory regime. But whether our jurisdiction to enforce the federal statutes should be set aside (or "reverse preempted") on this ground is a question for Congress, so the answer must be found in federal statutes. On this aspect of the inquiry, defendants and the district court are silent.

Congress addressed the extent to which enforcement of federal statutes may be permitted to impact state regulation of insurance in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, enacted in response to the Supreme Court's ruling in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533 (1944), that insurance is interstate commerce under the Commerce Clause. Intending to leave the regulation of insurance primarily to the States, Congress provided, with exceptions not relevant here, that no federal statute "shall be construed to invalidate, impair, or supersede any

law enacted by any State for the purpose of regulating the business of insurance . . . unless such [federal] Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). The Fair Housing Act, § 1981, and § 1982 do not specifically relate to the business of insurance, nor do they "invalidate" or "supersede" the Missouri laws regulating insurance. Thus, the question under the McCarran-Ferguson Act is whether enforcement of these federal statutes in the manner urged by plaintiffs would "impair" the State's regulation of insurance. State regulation is impaired only if the federal law "directly conflict[s] with state regulation," or if its application would "frustrate any declared state policy or interfere with a State's administrative regime." Humana Inc., v. Forsyth, 525 U.S. 299, 310 (1999).

Whether the adjudication of plaintiffs' pricing claims would impair Missouri's regime of insurance rate regulation under Humana is a fact-intensive issue that defendants did not raise in the district court or on appeal. The requisite level of interference is certainly more than possible. In holding that the filed rate doctrine barred RICO claims against a state-regulated electric utility, for example, Judge Tjoflat for the Eleventh Circuit summarized specific adverse impacts on the affected state regulatory regimes that might well constitute impairment for McCarran-Ferguson Act purposes. Taffet, 967 F.2d at 1491-92. Similarly, Judge Easterbrook in NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 290-91 (7th Cir. 1992), cert. denied, 508 U.S. 907 (1993), and Judge Jones dissenting in Dehoyos v. Allstate Corp., 345 F.3d 290, 300-02 (5th Cir. 2003), cert. denied, 541 U.S. 1010 (2004), gave powerful reasons why the relief requested in a disparate impact pricing claim under the Fair Housing Act could impair comprehensive state regulation of insurance rates. But a specific showing is needed. "The presence of a general regulatory scheme does not show that any particular state law would be invalidated, impaired or superseded by the application of the Fair Housing Act and the Civil Rights Acts." Mackey v. Nationwide Ins., 724 F.2d 419, 421 (4th Cir. 1984).

Here, the record on appeal does not sufficiently delineate either the nature of plaintiffs' price discrimination claims, the specific relief they seek, or the extent of

Missouri's insurance rate regulation to decide the McCarran-Ferguson Act impairment issue. We know defendants divide the State of Missouri into geographic rating territories and file different rating schedules for each territory, several of which are within Kansas City. We know that the Missouri administrative regime protects insureds from discriminatory pricing, see Mo. Rev. Stat. § 379.318.4, and that the agency may enforce compliance with this mandate in response to complaints by insureds, see Mo. Rev. Stat. §§ 379.348, 379.361. But we do not know whether insureds may bring an action in state court to challenge an insurance rate as discriminatory or unreasonable, nor do we know whether the Missouri statutes permit judicial review of the agency's determination of these issues.[2] Humana teaches that the mere fact of overlapping complementary remedies under federal and state law does not constitute impairment for McCarran-Ferguson Act purposes. 525 U.S. at 313-14; see Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1363 (6th Cir. 1995), cert. denied, 516 U.S. 1140 (1996).

The Supreme Court has repeatedly emphasized "that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Here, rather than develop a record adequate to apply the federal statute that specifically addresses the problem, the McCarran-Ferguson Act, defendants brought Rule 12(b)(1) motions alleging that the filed rate doctrine deprives insureds of standing to assert race discrimination pricing claims under the Fair Housing Act and the Civil Rights Acts. The district court erred in invoking the judicially created filed rate doctrine to restrict Congress's broad grant of standing to seek judicial redress for race discrimination.

---

[2]A number of state courts apply the filed rate doctrine to bar suits challenging allegedly discriminatory insurance rates under state law. See Schermer v. State Farm Fire & Cas. Co., 702 N.W.2d 898, 907 (Minn. App. 2005), and cases cited. Though relevant to the impairment question, the parties cite no Missouri cases addressing this issue, and based on our review the Missouri insurance statutes appear to be silent.

That is the primary question before us regarding the pricing claims and the only question we decide.[3]

### III. Conclusion.

The following portions of the district court's final judgments are reversed and remanded for further proceedings not inconsistent with this opinion: in the Farmers action, the judgment dismissing the price discrimination claims of plaintiffs Kerry Butler and Kim Nickerson; in the American Family action, the judgment dismissing the price discrimination claims of plaintiffs Marva Saunders, Cynthia Canady, and Kerry Butler; in the Shelter action, the judgment dismissing the price discrimination claim of plaintiff Kerry Butler. In all other respects, the judgments are affirmed.

_____

[3]Our conclusion that the pricing claims must be remanded makes it unnecessary to address plaintiffs' contention that the district court erred in striking a declaration by the former Director of the Missouri Department of Insurance submitted to show that the state regulators do not meaningfully review defendants' filed rates.