# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 07-1894

_____

Marva Jean Saunders, et al.,　　　　　*

　　　　　　　　　　　　　　　　　　*

　　Plaintiffs - Appellants,　　　　　*

　　　　　　　　　　　　　　　　　　*

　　v.　　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　*

Farmers Insurance Exchange, et al.,　*

　　　　　　　　　　　　　　　　　　*

　　Defendants - Appellees.　　　　　*

_____

No. 07-1897　　　　　　　　　　　Appeals from the United States
　　　　　　　　　　　　　　　　District Court for the
_____　　　　　　　　　　　Western District of Missouri

Marva Jean Saunders, et al.,　　　　　*

　　　　　　　　　　　　　　　　　　*

　　Plaintiffs - Appellants,　　　　　*

　　　　　　　　　　　　　　　　　　*

　　v.　　　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　*

American Family Mutual Insurance　　*
Company,　　　　　　　　　　　　　*

　　　　　　　　　　　　　　　　　　*

　　Defendant - Appellee.　　　　　　*

Coleman McClain, et al.,        *
                                           *

    Plaintiffs - Appellants,     *
                                           *

    v.                             *
                                         *

Shelter General Insurance      *
Company, et al.,            *
                                         *

    Defendants - Appellees.     *
------------------------------------------------ *
United States of America; Lawyers' *
Committee for Civil Rights      *
Under Law; National Community  *
Reinvestment Coalition,       *
                                         *

    Amici on Behalf of Appellants.  *

_____

Submitted: January 17, 2008
Filed: August 12, 2008

_____

Before LOKEN, Chief Judge, HANSEN and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

These are purported class actions on behalf of persons living in a "single, contiguous black community in Kansas City." Plaintiffs allege, *inter alia*, that defendant insurance companies ("the Insurers") violated the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and 42 U.S.C. §§ 1981 and 1982, by "charg[ing] higher

premium rates for the same type of homeowner's coverage to homeowners in the Community . . . than [they] charged homeowners in white communities." In Saunders v. Farmers Insurance Exchange, 440 F.3d 940 (8th Cir. 2006), after years of related litigation, we affirmed the dismissal of other claims that minority residents of the community were denied coverage due to the Insurers' discriminatory underwriting criteria. But we reversed the district court's dismissal of the price discrimination claims under the "filed rate doctrine," and we remanded those claims.

In remanding, we noted that the discriminatory pricing claims might be barred by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, as construed by the Supreme Court in Humana Inc. v. Forsyth, 525 U.S. 299 (1999). Enacted in response to the decision in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533 (1944), the McCarran-Ferguson Act preserves the traditional role of state insurance regulation by providing, in pertinent part, that no federal statute "shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). In Humana, the Court construed the word "impair" to mean, in addition to a "direct conflict" with state law, any application of federal law that would "frustrate any declared state policy or interfere with a State's administrative regime." 525 U.S. at 310. We concluded that the record on the prior appeal was not adequate to decide that issue.[1]

_____

[1]The federal civil rights statutes on which plaintiffs rely do not "specifically relate" to the business of insurance, so the McCarran-Ferguson Act bars applying these statutes to "invalidate, impair, or supersede" state insurance laws. Like the Seventh Circuit, we reject the contention by *amicus* Lawyers' Committee for Civil Rights Under Law that the McCarran-Ferguson Act does not apply to subsequently enacted federal civil rights legislation such as the Fair Housing Act. See NAACP v. Am. Family Mut. Ins. Co., 978 F.2d 287, 294 (7th Cir. 1992) (the term "'No Act of Congress' could not be more comprehensive"), cert. denied, 508 U.S. 907 (1993). Accord Murff v. Prof'l Med. Ins. Co., 97 F.3d 289, 292 n.4 (8th Cir. 1996), cert. denied, 520 U.S. 1273 (1997).

On remand, the Insurers renewed their Rule 12(b)(6) motions to dismiss, arguing that analysis of plaintiffs' lengthy complaints and the Missouri insurance laws establishes that the McCarran-Ferguson Act bars plaintiffs' price discrimination claims. Without objecting to deciding the issue on Rule 12 motions, plaintiffs argued that the McCarran-Ferguson Act does not preclude their federal civil rights claims. The district court[2] granted defendants' motions, concluding that the price discrimination claims would "impair" the Missouri laws that regulate the business of insurance within the meaning of 15 U.S.C. § 1012(b) as construed in Humana. Saunders v. Farmers Ins. Exch., 515 F. Supp. 2d 1009 (W.D. Mo. 2007). Plaintiffs appeal. Reviewing *de novo* the grant of motions to dismiss, we affirm. Benton v. Merrill Lynch & Co., 524 F.3d 866, 870 (8th Cir. 2008) (standard of review).

## I. Plaintiffs' Price Discrimination Claims.

Plaintiffs' complaints allege that the Insurers "used a multi-tiered rate structure based in whole or in part on the racial composition of Kansas City zip code areas" with the "intentional and/or unintentional unlawful effect of extracting higher premium rates from homeowners" in the predominantly black community. Their allegations of issues common to the class include:

> Whether [the Insurers] used separate rating territories to charge higher premium rates for risks located in the Community . . . than for comparable risks located in white communities.

> Whether [the Insurers] can provide any loss histories, or other actuarial or statistical data, to support [their] use of such segregated and discriminatory rating territories.

---

[2]The HONORABLE FERNANDO J. GAITAN, JR., Chief Judge of the United States District Court for the Western District of Missouri.

-4-

Plaintiffs allege that the Insurers violated 42 U.S.C. § 3604(b), which bars race discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," as well as § 1981 and § 1982. Their prayers for relief seek a declaration that the Insurers violated these civil rights statutes, an injunction against "any further conduct violating plaintiffs' rights," compensatory and punitive damages, and attorneys' fees and costs.

Plaintiffs' allegations of unintentional unlawful discrimination seek relief on a disparate impact theory of Fair Housing Act liability, that is, challenges to "practices that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). In a number of prior cases, we have recognized a disparate impact cause of action under the Fair Housing Act against governmental authorities. See, e.g., Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth., 417 F.3d 898, 902-03 (8th Cir. 2005). Applying Department of Housing and Urban Development standards, we have recognized a disparate impact Fair Housing Act claim against *private* actors in another context. See United States v. Badgett, 976 F.2d 1176 (8th Cir. 1992). But at least with respect to insurers, the question is not free from doubt. See NAACP v. Am. Family Mut. Ins. Co., 978 F.3d 287, 290-91 (7th Cir. 1992). However, the Insurers have not raised the issue and therefore we assume, without deciding, that private insurers may be liable under the Fair Housing Act on a disparate impact theory.[3]

Seeking to deflect the significance of their disparate impact theory on the McCarran/Ferguson Act analysis, plaintiffs on appeal note that they "complain of racially disparate treatment, or intentional discrimination, as well as disparate impact."

---

[3]A HUD regulation interprets § 3604(b) as applying to the business of homeowners insurance. See 24 C.F.R. § 100.70(d)(4); American Family, 978 F.2d at 297-301. However, "HUD has never applied a disparate impact analysis to insurers." Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1362 (6th Cir. 1995), cert. denied, 516 U.S. 1140 (1996).

They did not argue this distinction in the district court, which is reason enough to ignore it on appeal. Moreover, after twelve years of litigation, plaintiffs provide no factual basis for their conclusory allegations that the Insurers intentionally charged rates based on a homeowner's race. Their factually explicit allegations are that the Insurers used rating zones based on facially neutral risk factors that have a disparate racial impact. It is these disparate impact allegations that satisfied the threshold pleading requirement of Rule 8(a)(2) -- "allegations plausibly suggesting (not merely consistent with)" unlawful conduct. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007). Viewing the complaints in their entirety, the lengthy litigation history, and plaintiffs' categorical argument that no Fair Housing Act claims are barred by the McCarran/Ferguson Act, we conclude their conclusory allegations of discriminatory intent are mere "labels . . . and a formulaic recitation of the elements of a cause of action." Id. at 1965. The point is important. Our opinion should not be read as deciding whether disparate treatment claims against Missouri insurers are barred by the McCarran/Ferguson Act. In this case, "[t]he allegations of intentional race discrimination . . . do not appear to be preempted, but they are a diversion." Dehoyos v. Allstate Corp., 345 F.3d 290, 300 (5th Cir. 2003) (Jones, J., dissenting).

## II. Missouri's Regulatory Regime.

Like most States, Missouri thoroughly regulates the business of insurance. The premium rates charged by property and casualty insurers are governed by Chapter 379 of the Missouri Statutes. Insurers must file their rates and policy forms and, in the case of homeowners insurance, may only charge the filed rates. See Mo. Rev. Stat. §§ 379.321, 379.356. In setting rates, insurers *must* consider "past and prospective loss experience within and outside this state," "catastrophe hazards," "past and prospective expenses both countrywide and those specifically applicable to this state," "a reasonable margin of underwriting profit and contingencies," and "all other relevant factors, including trend factors." § 379.318(1). In establishing rates, insurers may group risks by classifications that "measure any differences among risks that can be demonstrated to have a probable effect upon losses or expenses." § 379.318(2).

Missouri prohibits rates that are "excessive . . . or unfairly discriminatory," terms carefully defined in § 379.318(4):

> No rate shall be held to be excessive unless such rate is unreasonably high for the insurance coverage provided and a reasonable degree of competition does not exist in the area . . . . Unfair discrimination shall be defined to include, but shall not be limited to, the use of rates . . . which unfairly discriminate between risks having essentially the same hazard and having substantially the same degree of protection against fire and allied lines.

Plaintiffs note that two provisions in Chapter 375 specifically address the issue of race discrimination, prohibiting an insurer from canceling or refusing to insure or refusing to continue to insure because of race. Mo. Rev. Stat. §§ 375.007, 375.936(11)(g). But they cite no authority extending those statutes beyond their plain meaning to cover a disparate impact claim of racially discriminatory pricing. Thus, discrimination in pricing is governed exclusively by § 379.318(4).

The Missouri Department of Insurance is "charged with the execution of all laws . . . in relation to insurance and insurance companies doing business in this state." § 374.010. The Director of Insurance may examine an insurer "at any time he may deem it advisable," but at least once every four years. § 379.343. If the Director finds that "any rate" filed by an insurer may not comply with the provisions of Chapter 379, he "shall hold a public hearing in connection therewith." § 379.346.2.[4] If he finds after a hearing that the rate does not comply, he "shall issue an order . . . stating when, within a reasonable period of time thereafter, the further use of such rate . . . shall be prohibited." § 379.346.3. The Director may also order the insurer to cease and desist violating the insurance laws, to take affirmative steps to comply with those laws, and

---

[4]Public hearings are conducted in accordance with detailed, recently amended administrative hearing procedures found in Mo. Code. Regs. Ann. tit. 20 § 800-1.100 (effective May, 30, 2008). See also Mo. Rev. Stat. § 374.046.

to pay a civil penalty and the reasonable costs of investigation. § 374.046.1. The authorized amount of civil penalties is specified. Charging unfairly discriminatory rates is a level two violation for which the maximum penalty is $1,000 per violation or $50,000 per year for multiple violations. §§ 374.049.2(2), 379.361. The Director may suspend or revoke an insurer's license for a willful violation. § 379.361.1.

A person "aggrieved by any rate charged" may ask the insurer to review the rate and, if the request is denied, may "file a written complaint and request for hearing with the director," who must hold a hearing if he finds that the complaint is made in good faith and with probable cause. § 379.348. Plaintiffs filed no administrative complaints in these cases. We assume -- though it appears the Supreme Court of Missouri has never considered the question -- that a decision by the Director not to hold a hearing in response to a § 379.348 complaint could be judicially reviewed under the contested case provisions of the Missouri Administrative Procedure Act. See Mo. Rev. Stat. §§ 536.063(1), 536.100; cf. Farm Bureau Town & Country Ins. Co. of Mo. v. Angoff, 909 S.W.2d 348 (Mo. banc 1995). Under that statute, the court reviews whether the agency action was in excess of its authority; unsupported by substantial evidence; procedurally unlawful; arbitrary, capricious or unreasonable; or an abuse of discretion. § 536.140.

In July 2006 amendments, the Legislature authorized the Director to file a civil action in state court seeking various remedies against a non-complying insurer, including "an order of restitution or disgorgement" in favor of "identifiable consumers" who have suffered "financial loss" from a violation of the insurance laws. § 374.048.2(d). This remedy applies to violations of the rate-regulating provisions of Chapter 379. § 379.361.2. As with the administrative remedies, punitive damages are unavailable and civil penalties are limited to $1,000 per violation. § 374.049.3(2). No provision of the Missouri insurance statutes allows an aggrieved insured to file a lawsuit in state court challenging an unlawful rate. Only the Director, in his discretion, may do so. Plaintiffs also concede there is no implied private right of action under Missouri law to enforce the mandate in § 379.318(4) that rates not be

excessive or unfairly discriminatory.  Cf. Dierkes v. Blue Cross & Blue Shield of Mo., 991 S.W.2d 662, 667 (Mo. banc 1999).  In Dierkes, the Court dismissed claims "based solely on the statutory violation" but allowed common law fraud and breach-of-contract claims against an insurer for misrepresenting that its policies met all "state and federal requirements" because those claims existed "independent of the foregoing statute."  Id. at 667-68.

### III.  Applying The McCarran-Ferguson Act and Humana.

The McCarran-Ferguson Act bars the application of federal statutes to "invalidate, impair, or supersede" state laws regulating insurance.  In this case, it is not argued that the federal laws invoked by plaintiffs would invalidate or supersede state law.[5]  Rather, the issue is whether the theory of liability asserted and the relief sought by plaintiffs would impair state law by interfering with Missouri's comprehensive administrative regime.

---

[5]There appears to be no direct conflict because, as the court observed in Dehoyos, 345 F.3d at 297-98 n.5, "the federal regulatory goal of disallowing racially discriminatory insurance pricing is in harmony with the state's goal of disallowing racially discriminatory insurance pricing."  See Mo. Rev. Stat. § 379.318(4), defining unfair discrimination "to include, but . . . not be limited to" risk and hazard discrimination.  However, the Supreme Court observed in Humana that "the term 'supersede' ordinarily means to displace (and thus render ineffective) while providing a substitute rule."  525 U.S. at 307 (quotation omitted).  The Missouri insurance laws allow rate classifications based on factors such as loss experience and define when a rate is "unfairly discriminatory" in terms specific to the business of insurance -- "risks having essentially the same hazard."  § 379.318(4).  In this disparate impact case, plaintiffs seek to displace the state law definition of unfair discrimination with a federal rule that is based on a single factor -- disparate racial impact -- and looks suspiciously like a "substitute rule."  Arguably, therefore, these pricing claims would "supersede" state law, as that term was defined in Humana.  But the issue was not raised in this case, and we need not decide it.

In Humana, the Supreme Court resolved a conflict in the circuits when it clarified that Congress in using the word "impair" intended to encompass more than direct conflicts with state law but did not intend "to cede the field of insurance regulation to the States." 525 U.S. at 308. The Court went on to conclude that the McCarran-Ferguson Act did not bar the civil RICO fraud claim at issue because Nevada's insurance laws also prohibited insurance fraud, and those laws permitted statutory and common law private actions to remedy such misconduct and allowed the recovery of damages exceeding the treble damages available under RICO. Therefore, the RICO claims at issue complemented rather than impaired Nevada's administrative regime. Id. at 311-13.

In applying Humana's fact-intensive interpretation of the word "impair," our focus must be on the precise federal claims asserted. Federal civil rights statutes are drafted broadly, so a statute might "impair" state insurance laws when applied in some ways, but not in others. For example, a federal claim alleging that an insurer's coverage denial was the product of overt racial animus would doubtless be in harmony with state insurance regulation, while a suit challenging the racially disparate impact of industry-wide rate classifications may usurp core rate-making functions of the State's administrative regime. Compare Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1222-23(11th Cir. 2001), cert. denied, 535 U.S. 1018 (2002). "It is one thing to say that an insurance company may not refuse to deal with . . . persons . . . . It is another thing to require federal courts to determine whether limitations on coverage are actuarially sound and consistent with state law." Doe v. Mut. of Omaha Ins. Co., 179 F.3d 557, 564 (7th Cir. 1999), cert. denied, 528 U.S. 1106 (2000).

The Missouri insurance laws require insurers to establish rates based upon economic factors such as loss experience that are essential to insurer solvency, and permit insurers to classify risks based upon standards that "measure any differences among risks that can be demonstrated to have a probable effect upon losses or

expenses." Mo. Rev. Stat. § 379.318.1-2.[6] These state statutes prescribing what rates may be charged are essential to the core of Missouri's regulation of the business of insurance. See SEC v. Nat'l Sec., Inc., 393 U.S. 453, 458-59, 463 (1969). In these cases, plaintiffs ask a federal court to determine that the Insurers' filed rates are unlawful using a different federal standard -- disparate racial impact -- and then to award damages based upon the lower rates they would have paid absent discrimination plus injunctive relief to prevent further violations of federal law. But in Missouri, the Director of Insurance has been delegated the essentially legislative task of rate-making by reviewing Insurer risk classifications and pricing differentials. If a federal court may assess damages based upon what a non-discriminatory rate would have been, and then prescribe the future rate in an injunctive decree, "[a] more complete overlap with the state [agency's] pricing decisions is impossible to conceive." Dehoyos, 345 F.3d at 302 (Jones, J., dissenting).

Moreover, unlike Nevada law at issue in Humana, 525 U.S. at 312, neither the Missouri insurance laws nor Missouri common law provide a private right of action for unfairly discriminatory insurance rates. Rather, aggrieved insureds must seek relief from the Director of Insurance, who has the exclusive authority to conduct an administrative hearing, or to commence an action in state court to remedy an insurer violation and the insured's financial injury. By mandating an exclusively administrative remedy, Missouri law preserves the agency's primary authority to determine whether rates are excessive or unfairly discriminatory, § 379.318(4), subject only to judicial review for arbitrary and capricious agency action. Even if the same legal standards apply under federal and state law (which would not be the case), transferring their administration from state agency to federal court "obviously would

_____

[6]As the Seventh Circuit observed in American Family, 978 F.2d at 290, "Insurance works best when the risks in the pool have similar characteristics. . . . To curtail adverse selection, insurers seek to differentiate risk classes with many variables. Risk discrimination is not race discrimination."

-11-

interfere with the administration of the state law. The states are not indifferent to who enforces their laws." Doe, 179 F.3d at 564.

In response, plaintiffs rely on Dierkes to argue that the Missouri insurance laws do not exclude remedies available under other state laws. But Dierkes held only that the insurance laws do not preclude common law claims "arising under a private agreement or from private misconduct . . . . not new rights created solely by the statute." 991 S.W.2d at 668. The state law right not to pay "unfairly discriminatory" insurance rates is solely a creature of the insurance statutes. By barring private actions to enforce that right, and by granting the Director of Insurance exclusive authority to seek the limited remedies for violations of Chapter 379 prescribed by statute, Missouri law creates an administrative regime that would be frustrated and interfered with, if not supplanted, by "a rate-payer's cause of action to recover damages measured by the difference between the filed rate and the rate that would have been charged absent some alleged wrongdoing." Taffet v. Southern Co., 967 F.2d 1483, 1491 (11th Cir.) (en banc), cert. denied, 506 U.S. 1021 (1992); see LaBarre v. Credit Acceptance Corp., 175 F.3d 640, 643 (8th Cir. 1999).[7]

For the first time on appeal, plaintiffs -- joined by the United States as *amicus* -- argue that Missouri allows private actions against insurers for rate discrimination under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 *et seq.* They fail to cite a case in which a state or federal court has applied the MHRA, which does not specifically mention insurance, to unlawful discrimination in the provision or pricing of insurance. More significantly, after the Insurers moved to dismiss plaintiffs' price discrimination claim as barred by the McCarran-Ferguson Act,

---

[7]We reiterate that our decision is limited to the impact of the specific claims asserted and relief sought by plaintiffs on the exclusively administrative insurance rate-setting regime under Missouri law. The McCarran-Ferguson Act's application might well be different if other disparate impact claims were asserted or if Missouri were to allow private actions challenging unfairly discriminatory rates.

-12-

plaintiffs failed to raise this issue, even though in <u>Saunders</u> we specifically stated that the availability of state remedies was crucial to the issue of preclusion under the McCarran-Ferguson Act after <u>Humana</u>. 440 F.3d at 946. Therefore, plaintiffs did not preserve the issue for appeal. We decline to consider it, or its significance. <u>See Snider v. United States</u>, 468 F.3d 500, 512 (8th Cir. 2006); <u>Von Kerssenbrock-Praschma v. Saunders</u>, 121 F.3d 373, 375-76 (8th Cir. 1997).

The judgment of the district court is affirmed.

_____